UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| STEVE THIEME,<br><br>                Plaintiff,<br>    v.<br>DIANE M COBB, *et al.*,<br><br>                Defendants.<br>_____/ | No. C 13-03827 MEJ<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS** [Dkt. No. 6] |

## I. INTRODUCTION

On July 16, 2013, Plaintiff Steve Thieme filed this lawsuit in Marin County Superior Court, asserting state claims against Defendants Diane Cobb dba DM Finance or DM Financial, Sloan Davis dba DM Finance or DM Financial, and VanDyk Mortgage Corporation, stemming from his loss of $150,000 he invested in Cobb and Davis's bridge mortgage business, which Cobb allegedly undertook while an employee of VanDyk.  Not. of Rem., Dkt. No. 1, Ex. A (Complaint).

On August 16, 2013, VanDyk removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, 1441(a), and 1446.  Dkt. No. 1.  Pending before the Court is VanDyk's Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 6.  Plaintiff has filed an Opposition (Dkt. No. 15), and VanDyk has filed a Reply (Dkt. No. 31).  On October 31, 2013, the Court held oral argument on the Motion.  After carefully considering the parties' briefs, controlling authorities, and oral argument, the Court **GRANTS** VanDyk's Motion and **DISMISSES** Plaintiff's Complaint **WITH LEAVE TO AMEND**.

## II. BACKGROUND

Plaintiff lives in Baton Rouge, Louisiana. Compl. ¶ 1. VanDyk is a Michigan Corporation that provides mortgage services, with offices in Northern California, as well as in Las Vegas, Nevada. Compl ¶¶ 4, 5. Defendant Cobb was employed by VanDyk from October 2007, through December 31, 2012. *Id.* ¶ 14. From October 2007, to August 2011, Cobb was the branch manager at VanDyk's Mill Valley and Larkspur offices. *Id.* ¶ 5. Subsequently, from August 2011, until December 31, 2012, Cobb was the branch manager at VanDyk's Las Vegas office. *Id.*

According to Plaintiff, Cobb and Davis formed an informal partnership or association called DM Financial in March 1990. *Id.* ¶ 7(a). The purpose of DM Financial was to arrange bridge mortgages for persons relocating, often from one state to another. *Id.* The bridge mortgages would facilitate the relocation. *Id.* The funding for these bridge mortgages was provided by investors such as Plaintiff, who alleges that his investments into DM Financial were wrongfully and/or unlawfully converted during the time Cobb was an employee of VanDyk. *Id.* ¶ 15. Specifically, Plaintiff alleges that "[d]uring the approximate period of February 9, 2011 to December 31, 2012, [Plaintiff] forwarded no less than $150,000 to Cobb and Davis in order to participate in no less than six bridge loans under the aegis and auspices of Defendants Cobb, Davis and Does 1-50, for the applicable investments to be made on Plaintiff Thieme's behalf." *Id.* ¶ 7(g). Plaintiff alleges that Cobb's actions "were at all times committed . . . incident to her duties as a branch manager of VanDyk Mortgage Corporation, whether in Mill Valley, California, Larkspur, California, and/or Las Vegas, [Nevada]." *Id.* ¶ 7(k). Particularly, "[a]s part of her duties, Cobb was required to locate prospective borrowers, and leads to such prospective or potential borrowers, who could then be contacted or solicited in the context of first mortgage borrowing from VanDyk Mortgage Corporation by Cobb and [her] associates." *Id.*

Plaintiff alleges that in furtherance of their scheme to defraud, Cobb and Davis were forging promissory notes and deeds of trust, which were sent to the investors as evidence that the loans had in fact been made. *Id.* ¶ 9. However, beginning in April 2012, payments from Cobb and Davis to Plaintiff became sporadic and then stopped. *Id.* Plaintiff alleges that by July 2012, Cobb and David

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1 had solicited investments from 15 investors, with a total sum of at least $2,000,000.  *Id*. ¶ 8.

2      Based on the foregoing, Plaintiff asserts claims against Cobb and Davis for: (1) accounting; (2) breach of fiduciary duty; (3) conversion; (4) common count; (5) breach of Articles 5 and 6 of California Business and Professions Code; and (6) fraud and deceit.  *Id*. at 12-23.  Plaintiff asserts claims against VanDyk for: (1) professional negligence; and (2) respondeat superior.  *Id*. at 24-36.  VanDyk now moves to dismiss Plaintiff's claims against it on the grounds that Plaintiff has not and cannot plead sufficient facts to maintain a negligence claim and no claim for respondeat superior exists under California law.  Mot. at 1-2.

### III.  LEGAL STANDARD

     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### IV.  DISCUSSION

**A.  Plaintiff's Seventh Cause of Action for Professional Negligence**

     Plaintiff's seventh cause of action asserted against VanDyk is for negligent supervision, hiring, and oversight.  Compl. ¶¶ 54 - 76.  Essentially, Plaintiff alleges that VanDyk had a duty to

3

initially and continuously investigate and monitor Cobb's activities in her role as branch manager and externally to ensure that she was not engaged in business that conflicted with VanDyk's mortgage lending business or violated federal regulations and VanDyk's internal policies prohibiting outside lending activities. Opp. at 7-8. He asserts that VanDyk's failure to take such actions resulted in his loss of $150,000. *Id*.

Generally, to succeed on a negligence claim in California, a plaintiff must prove the following elements: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (Cal. Ct. App. 2008)). In the employment context, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Tech., Inc*., 145 Cal. App. 4th 790, 815 (2006). "Negligence is a core element of this claim – the plaintiff must demonstrate that the employer 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 951 (quoting *Delfino*, 145 Cal. App. 4th at 815). The requirement that an employer have knowledge of the employee's potential danger goes to the foreseeability requirement discussed in the first prong of the *Rowland* test. *Id*. (citing Rest. 3d Agen. § 7.05, comment d.)

    1.    <u>Duty</u>

VanDyk first challenges Plaintiff's negligence claim on the ground that he has not alleged facts establishing a connection between Plaintiff and VanDyk which would give rise to a legal duty of care. Mot. at 5. Plaintiff, however, maintains that Cobb's activity of promoting second mortgages through DM Financial "was a closely related and inherent outgrowth" of VanDyk's mortgage lending business, thereby creating a duty of care on the part of VanDyk to Plaintiff and other investors in Cobb's scheme. Opp. at 6-7. The Court, however, agrees with VanDyk.

4

"The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*., 231 Cal. App. 3d 1089, 1095 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc*., 49 Cal. App. 4th 472, 481 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Inv., Inc*., 118 Cal. App. 4th 269, 278 (2004) (citation omitted).

California courts apply the seven-factor *Rowland* test to determine whether a duty exists that would support a finding of negligence. *Rowland v. Christian*, 69 Cal.2d 108, 113 (1968) (overruled in other part). Specifically, courts examine the following factors to determine whether a duty exists: "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of the connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved." *Id*. Once the defendant's duty has been established, the plaintiff must show that defendant breached that duty and thereby proximately caused her injury. *See Keum v. Virgin Am*., 781 F. Supp. 2d 944, 951 (N.D. Cal. 2011).

### a.     Foreseeability

Here, as VanDyk correctly points out, Plaintiff has not alleged that he was a customer or had any direct business dealings with VanDyk. Reply at 5. Rather, Plaintiff dealt directly with Cobb in her business as DM Financial. There are no allegations that VanDyk knew of Plaintiff, his interaction with Cobb or DM Financial, or his decisions to repeatedly invest his money with Cobb and DM Financial. Moreover, although Plaintiff alleges that VanDyk had a duty to investigate Cobb and continue to monitor her activities, Plaintiff has set forth no allegations that Cobb had previously been involved in impermissible activity such that VanDyk would have been on notice that Cobb presented such a risk to its customers. At most, Plaintiff has alleged that Cobb's name an email

1  address using DM Financial were discoverable on the internet and that Cobb used VanDyk's
2  computers and answered the phone as VanDyk. Compl. ¶ 64. However, these facts do not
3  demonstrate that Cobb was engaged in any business that presented a conflict or potential risk to
4  Plaintiff. Indeed, according to Plaintiff's allegations, it wasn't until 2012 when Plaintiff failed to
5  receive return on the money he invested with Cobb and Davis, that he became aware of their scheme.
6  *Id. ¶¶ 8-9.* The Court thus finds that Plaintiff has failed to demonstrate Cobb's purported unlawful
7  conduct was foreseeable to VanDyk.

    *b. Degree of Certainty that the Plaintiff Suffered Injury*

9   As to this factor, Plaintiff has clearly alleged that he invested $150,000 with Cobb and Davis,
10  which Cobb and Davis failed to account for.

    *c. Closeness of the Connection Between Defendant's Conduct and Plaintiff's Injury*

13   Plaintiff alleges that had VanDyk investigated and monitored Cobb's activities with DM
14  Financial, it would have prevented his injuries. *Id*. ¶¶ 59-61, 67. However, Plaintiff acknowledges in
15  his Complaint that Cobb was acting outside the scope of her employment and in violation of
16  VanDyk's internal operating rules. *Id*. ¶¶ 56, 58, 62, 63, 65. Plaintiff has not set forth any
17  allegations indicating that Cobb's act of operating a business engaged in arranging bridge financing
18  was part of her job duties at VanDyk; that VanDyk directed her to engage in that business; or that
19  VanDyk profited from Plaintiff's investment. Plaintiff's investments were with Cobb and DM
20  Financial, not VanDyk. In particular, Plaintiff has not alleged that he obtained a mortgage from
21  VanDyk or had any kind of business relationship with VanDyk at any point. His dealings were with
22  Cobb, individually, and exclusively dealt with investing in DM Financial's bridge lending operation.
23  Nor does the fact that VanDyk supplied Cobb with an office and computer to carry out her duties as a
24  VanDyk employee demonstrate any connection between VanDyk and Plaintiff's decision to invest his
25  money with DM Financial. *See Delfino*, 145 Cal. App. 4th at 816 (finding no connection between
26  plaintiffs' injuries and the fact that the defendant-employer supplied the offending-employee a
27  computer which the employee used to send threatening messages to the plaintiffs).

6

### d. *The Moral Blame Attached to the Defendant's Conduct*

On this element, Plaintiff contends that, while he does not "accuse" VanDyk of stealing his money, VanDyk failed to take steps necessary to prevent its employees from stealing, which included "the duty to hire carefully, to regularly and consistently supervise the branches, to prevent conflicts of interest and other situations of real or potential dishonesty from ever arising." Opp. at 13. Plaintiff's argument, however, lacks any factual support in his Complaint. There are no allegations indicating that VanDyk was on notice of Cobb's operation of DM Financial such that it failed to take either preventative or disciplinary actions against Cobb. Moreover, there are no allegations that VanDyk authorized Cobb's conduct. Thus, there is no basis to attach moral blame for Plaintiff's loss to VanDyk.

### e. *The Policy of Preventing Future Harm*

Plaintiff argues that imposing a duty on VanDyk to investigate and monitor its employee's conduct would protect others from similar harm. Opp. at 14. However, as indicated above, there is nothing in Plaintiff's Complaint indicating that VanDyk was aware of Cobb's activities or knew that she was taking investments from unknown individuals such as Plaintiff. Instead, as Plaintiff acknowledges, Cobb's activities as part of D.M. Financial were outside the scope of her employment with VanDyk, contravened VanDyk's internal policies, and violated lending regulations.

### f. *The Extent of the Burden to the Defendant and Consequences to the Community of Imposing a Duty to Exercise Care with Resulting Liability for Breach*

Here, as VanDyk correctly points out, the burden Plaintiff seeks to impose is great. Reply at 7. Finding that a duty exists between VanDyk and Plaintiff – who had no relationship with VanDyk – would create indeterminate liabilities on the part of VanDyk to an indeterminate number of people for acts outside the employee's scope of employment. As the court recognized in *Delfino*, "[i]t would be a dubious proposition indeed to suggest that a party, simply by virtue of engaging in business, owes a duty to the world for all acts taken by its employee, irrespective of whether those actions were connected with the enterprise in which the business was engaged." 145 Cal. App. 4th at 816.

       *g.*    *The Availability, Cost, and Prevalence of Insurance for the Risk Involved*

Because neither party provides any argument on this factor, the Court declines to address it.

    2.    <u>Summary</u>

Taking the foregoing factors into consideration, the Court finds that Plaintiff has failed to set forth allegations demonstrating that VanDyk owed a duty of care to Plaintiff. There are no facts indicating that Plaintiff's injury was foreseeable, that it was connected to the operation of VanDyk's business, or suggesting that VanDyk is morally culpable for Plaintiff's loss. Finding that a duty exists in this scenario would force VanDyk to guard against any conduct by its employees involving any person; rather than conduct that is related to the employee's duties. Because Plaintiff has not set forth allegations to support the duty element of his negligence claim, the Court finds it is subject to dismissal. The Court therefore **GRANTS** VanDyk's Motion with respect to Plaintiff's claim for professional negligence. However, because it may be possible for Plaintiff to allege additional facts supporting the elements discussed above, the Court **GRANTS** Plaintiff leave to amend.

### B.    Plaintiff's Eighth Cause of Action for Respondeat Superior

Plaintiff's Eighth Cause of Action is for respondeat superior. Compl. ¶¶ 77-88. Plaintiff alleges that as VanDyk's employee and a branch manager, VanDyk is liable for Cobb's conduct which lead to his loss of $150,000. VanDyk moves to dismiss this claim on the ground that California does not recognize a cause of action for respondeat superior; rather, it is merely a theory of liability. Mot. at 10. The Court agrees with VanDyk. *See Fidelity Nat'l Title Ins. Co. v. Castle*, 2011 WL 6141310, at *15 (N.D. Cal. Dec. 8, 2011) (dismissing respondeat superior cause of action without leave to amend); *Animal Legal Def. Fund v. HVFG LLC*, 2013 WL 3242244, at *3 (N.D. Cal June 25, 2013); *Moore v. Comcast Sportsnet*, 2013 WL 451665, at *2 (N.D. Cal. Feb. 4, 2013). Because Plaintiff's cause of action for respondeat superior does not present a cognizable claim, it is subject to dismissal with prejudice.

UNITED STATES DISTRICT COURT
For the Northern District of California

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** VanDyk's Motion to Dismiss (Dkt. No. 6) as follows: (1) Plaintiff's claim for professional negligence is **DISMISSED WITHOUT PREJUDICE**; (2) Plaintiff's claim for respondeat superior is **DISMISSED WITH PREJUDICE**. Plaintiff.  The Court further **GRANTS** Plaintiff leave to file an amended complaint no later than December 9, 2013.

**IT IS SO ORDERED.**

Dated: November 18, 2013

_____
Maria-Elena James
United States Magistrate Judge