UNITED STATES DISTRICT COURT

Northern District of California

STEVE THIEME,

               Plaintiff,

    v.

DIANE E. COBB, INDIVIDUALLY, AND DBA DM FINANCIAL, AKA DIANE WINEGARDNER; SLOANE DAVIS INDIVIDUALLY AKA SLOAN DAVIS, AND DBA DM FINANCIAL AKA FINANCIAL Dm; VANDYK MORTGAGE CORPORATION; and DOES 1-100, INCLUDING ROE CORPORATIONS,

               Defendants.

_____/

No. C 13-3827 MEJ

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S APPLICATION FOR SERVICE BY PUBLICATION**
**(Dkt. No. 32)**

**INTRODUCTION**

Pending before the Court is Plaintiff's Application to Serve Defendants Diane Cobb and Sloane Davis by Publication.  Dkt. No. 32.  After receiving Plaintiff's Application, the Court has twice ordered supplemental briefing on this matter to determine the extent to which Plaintiff has exhausted efforts to effect service on these Defendants. *See* Dkt. Nos. 33, 36.  Having reviewed and considered Plaintiff's responses and the relevant legal authority, the Court hereby DENIES WITHOUT PREJUDICE Plaintiff's Application to Serve Defendants Cobb and Davis by Publication.

**BACKGROUND**

On August 16, 2013, Defendant Van Dyk Mortgage removed this action from San Francisco Superior Court.  Dkt. No. 1 ("Notice of Removal").  In its Notice of Removal, Van Dyk indicated that Defendants Diane Cobb and Sloane Davis did not join in the removal because they could not be located and had not been served with the Complaint. *Id.* at 3.  On September 24, 2013, the Court ordered Plaintiff to file a status statement indicating whether he had effected service of process on

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Cobb and Davis, or if he intended to dismiss them from this lawsuit.  Dkt. No. 19.  The next day

2    Plaintiff filed a status statement in the form of a declaration from his counsel, Stephen A. Fraser

3    ("Counsel"), informing the Court that Plaintiff would not be dismissing Defendants Cobb and Davis,

4    but that he had thus far been unable locate them.  Dkt. No. 22, ¶¶ 2, 4.  Counsel documented his

5    efforts up to that point to locate Cobb and Davis and submitted affidavits of due diligence from

6    attempting to locate them in another case, *Marvin Scott & Patricia Scott v. Diane Cobb, individually,*

7    *and dba DM Financial, AKA Diane Winegardner, et al.* (Marin County Superior Court, Civ. No.

8    1301303).  Dkt. No. 22 & Exs. 1-5.  Counsel also noted that he went to Las Vegas on September 7,

9    2013, to locate Cobb at her last reported address, 3013 Periscope Circle, Las Vegas, but was informed

10   by the resident, Mr. Abramov, that Cobb and her husband had been tenants there for three months,

11   from approximately March through June, and then had left the premises, leaving no forwarding

12   address and having failed to pay rent for three months.  *Id.* ¶ 6.

13            On October 21, 2013, Plaintiff filed an Application to Serve by Publication of Summons to

14   Defendants "Diane Cobb aka DM Financial and also known as Diane Winegardner, and Sloane Davis

15   aka 'DM Financial' and/or 'Financial Dm'" (collectively "Defendants").  Dkt. No. 32 ("Appl.").

16   Specifically, Plaintiff requested the Court give him permission to serve Defendants by publication of

17   the summons in the Las Vegas Sun, which Plaintiff stated "is most likely to give actual notice to

18   Diane Cobb and Sloane Davis."  *Id.* ¶ 6; *see also id.* at *3 (Proposed Order).  Plaintiff stated that he

19   had exercised "extraordinary diligence in seeking to serve the defendants," resubmitting the affidavits

20   of diligence from the *Scott* case showing Plaintiff's earlier efforts to locate Defendants in Las Vegas,

21   Nevada.  *See* Appl., Exs. 1-6.  The Exhibits show that service was attempted in the *Scott* case on

22   Cobb on at least six different days, from April 17, 2013 to May 5, 2013.  *Id.*, Exs. 3-6.  Cobb was

23   eventually served by substituted service in the *Scott* case, leaving the documents with a competent

24   member of the household at the Periscope Ct. address on April 30, 2013 and later mailing copies to

25   the same address on May 7.  *Id.*, Ex. 3.  The *Scott* plaintiffs also attempted to serve Davis on April

26   17, at two locations in Las Vegas, but were unable to locate him.  *Id.*, Exs. 1-2.  Plaintiff stated that

27   Defendants "are believed to be still residing in the Las Vegas area."  *Id.* ¶ 2.

28

2

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    On October 24, 2013, the Court ordered supplemental briefing, noting that Plaintiff's

2    Complaint indicated that Defendants had substantial ties to Marin County, California, but that

3    Plaintiff's efforts to locate Defendants focused on Las Vegas, Nevada.  Dkt. No. 33.  Plaintiff

4    responded with a declaration from Counsel stating he had gone to the County's Registrar of Voters

5    and found that Defendants were not shown as voters in the Registrar's computer system.  Dkt. No.

6    34, ¶ 3.  Likewise, he found no property in Defendants' names through a search at the Marin County

7    Assessor-Recorder's Office.  *Id.* ¶¶ 4, 6.  Counsel's search of the National Mortgage Listing System

8    only showed that Cobb abandoned her licenses in all states, while Mr. Davis was not licensed as an

9    accountant or mortgage broker or originator, anywhere.  *Id.* ¶ 11.  Mr. Fraser further declared that he

10   personally checked on the addresses of the VanDyk/Cobb/Davis offices in Marin County, but none

11   remained in Mill Valley, Larkspur, or Novato, California.  *Id.* ¶ 10.  He declared he is presently

12   unable to locate Defendants in Marin County, or in the State of California.  *Id.* ¶ 12.  He also queried

13   his clients and all aver that Defendants' last residence addresses were in Las Vegas.  *Id.* ¶ 7.

14   Counsel explained that his current efforts to locate Defendants include pursuing a lead on

15   Cobb in New Paris, Ohio, and contacting close relatives of Cobb living throughout the United States.

16   *Id.* ¶¶ 13, 15.  Plaintiff was also scheduled to depose Cobb's stepson, Anthony Richard Cobb, on

17   November 8, 2013 in San Rafael, California, to test his earlier statements to Counsel that Defendants

18   moved to Las Vegas, but that he has not been in contact with Defendants for the last year and does

19   not know where they are presently residing.  *Id.* ¶ 5.  Counsel has also been in contact with the

20   Federal Bureau of Investigation about the Defendants, but with no new leads.  *Id.* ¶ 14.  Counsel

21   concluded by acknowledging that "it may be appropriate to publish the summonses" to Defendants

22   "in both Las Vegas and Marin County, in which case the Independent Journal in Marin County,

23   which is read by most readers in Marin County, and the Las Vegas Review Journal[1] in Las Vegas are

24   the newspapers with the largest circulation in those areas, respectively."  *Id.* ¶ 16.

25   On October 30, 2014, the Court ordered that Plaintiff respond to additional questions

26   _____

27   [1]  Plaintiff noted that the earlier referenced Las Vegas Sun refers all queries to the Review

28   Journal.  Dkt. No. 34, ¶ 16.

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1  concerning his attempts to serve Cobb and Davis.  Dkt. No. 36.  After brief discussion on this matter

2  of service during the hearing for Van Dyk's Motion to Dismiss on October 31, 2014, the Court

3  permitted Counsel to respond to the Court's questions in writing.  Later that same day, Counsel

4  submitted a declaration responding to the Court's questions, signed by Counsel under penalty of

5  perjury.  Dkt. No. 39 ("Second Suppl.").  From Counsel's written response and description to the

6  Court at the October 31 hearing, Counsel is currently pursuing six cases, including one on behalf of

7  Plaintiff Thieme, that Counsel describes as "basically the same, identical or closely similar issues,

8  facts, and theories, and disparity only or mainly in the amount of money lost."  Second Suppl. at 2.

9  Counsel clarified that he "aggressively pursued . . . service of summons prior to April 30, 2013" in

10  one of these six cases, the *Scott* case, but he has not hired process servers in the *Thieme* case,

11  explaining that "[t]here was no sense in hiring professional process servers for the other cases since

12  by the time those matters were filed, I knew that Ms. Cobb and Mr. Davis were nowhere to be

13  found."  *Id.*  Counsel further stated that "I have no doubt that both Ms. Cobb and Mr. Davis are well

14  aware of the existence of lawsuit(s) brought against them through the substituted service on Ms.

15  Cobb effected April 30, 2013 in Las Vegas.  She has been very close to Mr. Davis for over 15 years,

16  and I have no doubt she remains in touch with him."  *Id.* at 3.

17         From his responses, Counsel has primarily been the one investigating the whereabouts of

18  Defendants.  When asked whether Plaintiff hired a professional process server to locate the

19  Defendants, Counsel responded that he had not, but he "personally knew all of the defendants'

20  locations in this State, which were all in Marin County."  *Id.*  Likewise, when asked what efforts had

21  been used to locate Defendants through DM Financial, Counsel replied that he had "check the

22  internet in Washington State, Nevada, Tennessee, and California.  All of the DM Finance offices in

23  those states are closed down."  Second Suppl. at 4.  Counsel further informed that Court that he has

24  "leads to Ms. Cobb's very close friends in Marin County which were recently provided" by one of his

25  clients.  *Id.* at 2.  Counsel advised the Court that he is "reflecting on a way to use these possible

26  sources, and will wait for the deposition of Mr. Tony Cobb, defendant Cobb's stepson, and the efforts

27  of [the] private investigator I have engaged in Ohio."  *Id.*  Counsel has not attempted to locate

28

4

Defendants through their former attorney, nor has he attempted service by email, explaining that he "believe[s] it to be ineffective service." *Id.* at 3-4.

## LEGAL STANDARD

**A.    Service by Publication Under Fed. R. Civ. P. 4(e)**

Pursuant to Federal Rule of Civil Procedure ("Rule") 4(e), service upon an individual may be effected in any judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). The goal of Rule 4 is to "to provide maximum freedom and flexibility in the procedures for giving all defendants . . . notice of commencement of the action and to eliminate unnecessary technicality in connection with service of process." *Elec. Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 314 (9th Cir. 1992) (citation omitted). Due Process requires that any service of notice be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Pursuant to Rule 4(e)(1), the Court looks to California law, the state in which this Court sits, to determine the sufficiency of the proposed service. Service by publication is permissible under California law in certain circumstances:

> (a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that . . . (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action.

Cal. Civ. Proc. Code § 415.50(a). "Because of due process concerns, service by publication must be

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  allowed only as a last resort." *Duarte v. Freeland*, 2008 WL 683427, at *1 (N.D. Cal. Mar. 7, 2008)

2  (internal quotations and citations omitted).

3      In determining whether a plaintiff has exercised "reasonable diligence" for purposes of

4  section 415.50(a), a court must examine the affidavit required by the statute to see whether the

5  plaintiff "took those steps a reasonable person who truly desired to give notice would have taken

6  under the circumstances." *Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 333 (1978) ("notions of fair

7  play and justice embodied in the concept of due process of law" require the "exercise of reasonable

8  diligence to locate a person in order to give him notice before resorting to the fictional notice

9  afforded by publication."). The term "reasonable diligence" denotes a "thorough, systematic

10  investigation and inquiry conducted in good faith by the party or his agent or attorney." *Watts v.*

11  *Crawford*, 10 Cal. 4th 743, 749 n.4 (1995) (citation omitted). "Before allowing a plaintiff to resort to

12  service by publication, the courts necessarily require him to show exhaustive attempts to locate the

13  defendant, for it is generally recognized that service by publication rarely results in actual notice."

14  *Id.* Some courts, including this one, have ordered both service by email and by publication "out of an

15  abundance of caution." *Aevoe Corp. v. Pace*, 2011 WL 3904133, at *2 (N.D. Cal. Sept. 6, 2011).

16  The fact that a plaintiff has taken some reasonable steps does not necessarily mean that "all myriad . .

17  . avenues" have been properly exhausted to warrant service by publication. *Donel*, 87 Cal. App. 3d at

18  333.

19      Furthermore, in considering motions to allow service by publication, "California law is clear

20  that an affidavit is required, not merely a declaration." *Bell-Sparrow v. Wiltz*, 2013 WL 2146574, at

21  *2 (N.D. Cal. May 15, 2013) (finding that while plaintiff made reasonable efforts, such as purchasing

22  a "find person" report, attempting personal service on a last known address, and attempting service

23  by mail, these efforts fell short of diligent search required by § 415.50(a) to warrant the last-resort

24  measure of summons by publication). An affidavit is a "voluntary declaration of facts written down

25  and sworn to by the declarant before an officer authorized to administer oaths." *Id.* (citing Black's

26  Law Dict., Ninth Ed.). "Given the serious due process concerns raised by permitting service through

27  publication," failure to submit an affidavit sworn and attested to by a notary public demonstrating

28

1   that Plaintiff exercised "reasonable diligence" for purposes of section 415.50(a) is not quickly

2   excused. *Bell-Sparrow*, 2013 WL 2146574, at *2. Finally, "attempts at personal service, search,

3   affidavits, and the court's order for publication must [ ] follow in reasonably quick succession so that

4   they would relate to the conditions at the time of publication." Judicial Council Comment to Cal.

5   Civ. Proc. Code § 415.50(a) (citing *Forbes v. Hyde*, 31 Cal. 342, 350 (1866)).

6   **B.     Timely Service Under Fed. R. Civ. P.  4(m)**

7          Rule 4(m) mandates that a defendant must be served within 120 days of the filing of the

8   complaint, or else the action must be dismissed as to that defendant, without prejudice. Fed. R. Civ.

9   P. 4(m). However, the Court has discretion to extend the time for service, if the plaintiff shows good

10  cause for the failure to serve. *Id.* If a plaintiff shows good cause for the failure, the Court "must

11  extend the time for service for an appropriate period." *In re Nat'l Sec. Agency Telecomm. Records*

12  *Litig.*, 564 F. Supp. 2d 1109, 1137 (N.D. Cal. 2008) (quoting Fed. R. Civ. P. 4(m)).

13         The existence of good cause is determined on a case by case basis. *In re Sheehan*, 253 F.3d

14  507, 512 (9th Cir. 2001). Good cause means, at a minimum, excusable neglect. *Boudette v. Barnette*,

15  923 F.2d 754, 756 (9th Cir. 1991). The Court, in its discretion, may grant an extension even in the

16  absence of good cause. *In re Sheehan*, 253 F.3d at 513 (citing *Petrucelli v. Bohringer & Ratzinger*,

17  46 F.3d 1298, 1305 (3d Cir. 1995)). The Ninth Circuit has found it unnecessary to articulate a

18  specific test that a court must apply in exercising its discretion under Rule 4(m), noting only that a

19  "court's discretion is broad." *Id.*

20                                      **DISCUSSION**

21         By Plaintiff's own admission, he has not exhausted efforts to locate Defendants. *See Watts*,

22  10 Cal. 4th at 749 n.4. Plaintiff has informed the Court that Counsel was scheduled to depose

23  Defendant Cobb's stepson on November 8, 2013 in San Rafael, California, to obtain statements under

24  oath about Defendant Cobb's whereabouts. Likewise, Counsel declared to the Court that he compiled

25  lists of both Defendant Cobb and Davis's relations and would "begin to track these down or hire a

26  detective agency to do that." Second Suppl. at 4. "While these leads may turn out to be dead ends,

27  Plaintiff is obligated to try." *Bell-Sparrow*, 2013 WL 2146574 (citing *Combs v. Doe*, 2010 WL

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   4065630, * 1 (N.D. Cal. Oct. 15, 2010) (permitting service by publication only after plaintiff

2   conducted an internet WHOIS search, hired a private investigator, subpoenaed several internet

3   companies, attempted service on several potential alter egos and apparently fake addresses used to

4   evade service)).

5          Additionally, while Counsel seems certain that the Defendants have "disappeared" and that

6   there is "no sense" in hiring professional process servers to locate them (Second Suppl. at 2), the

7   Court is not as convinced.  Given the serious due process concerns raised by what some courts have

8   called the "fictional notice" afforded by service through publication, the Court will maintain

9   California's requirement that such service only be permitted as a last resort.  *Donel*, 87 Cal. App. at

10  333.  While Counsel has done his own personal investigation to try to locate Defendants and declared

11  such efforts to be fruitless, Plaintiff has "neglected to pursue other available avenues of inquiry such

12  as serving interrogatories on co-defendants who had already been served and were properly before

13  that court." *Sananikone v. United States*, 2009 WL 796544, at *3 (E.D. Cal. Feb. 25, 2009) (citing

14  *Kott v. Superior Court*, 45 Cal. App. 4th 1126, 1139 (1996)).  Nor has Plaintiff "resorted to other

15  means that may be at [his] disposal, such as hiring a professional process server." *Bell-Sparrow*,

16  2013 WL 2146574, at *2.  While Counsel hired a professional process server in the *Scott* case back in

17  April of this year in Nevada, no efforts have been made to locate Defendants through a professional

18  process server in California, nor within the last six months.

19          Although Counsel declared that he has personally searched for Defendants in California, he

20  provided no dates or records of these searches to help the Court determine the reasonable diligence or

21  timeliness of these efforts.  Without a better accounting of these past efforts or additional efforts to

22  locate the Defendants now, the Court is not convinced that ordering publication at this point would

23  adequately relate to the conditions at the time of the earlier attempts at personal service.  *See* Judicial

24  Council Comment to Cal. Civ. Proc. Code  § 415.50(a) ("attempts at personal service, search,

25  affidavits, and the court's order for publication must [ ] follow in reasonably quick succession so that

26  they would relate to the conditions at the time of publication.").  Plaintiff's Application and related

27  declarations of efforts to locate Defendants are, at present, insufficient for a finding of reasonable

28

diligence required by Cal. Civ. Proc. Code § 415.50(a).

**CONCLUSION**

For the reasons set forth above, Plaintiff's Application for court approval of service by publication (Dkt. No. 32) is DENIED WITHOUT PREJUDICE.  Pursuant to the Court's discretion under Fed. R. Civ. P. 4(m), Plaintiff shall have 60 days from the date of this order in which to exhaust his available remedies, and if none are successful, he may refile his motion for court approval of service by publication.  Such a motion shall include a sworn affidavit, attesting to Plaintiff's efforts and complying with the requirements of Cal. Civ. Proc. Code § 415.50(a) (by demonstrating that Defendants "cannot with reasonable diligence be served in another manner specified in this article and that . . . (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action.").

**IT IS SO ORDERED.**

Dated: November 18, 2013

_____
Maria-Elena James
United States Magistrate Judge

United States District Court
For the Northern District of California