UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE THIEME,

    Plaintiff,

v.

DIANE M. COBB, et al.,

    Defendants.

Case No. 13-cv-03827-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 82

## I. INTRODUCTION

Pending before the Court is Defendant VanDyk Mortgage Corporation's ("VanDyk") Motion to Dismiss Plaintiff Steve Thieme's ("Plaintiff") First Amended Corrected Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 82. Plaintiff has filed an Opposition (Dkt. No. 86), and VanDyk has filed a Reply (Dkt. No. 88).

Having considered the parties' positions, relevant legal authority, and the record in this case, the Court GRANTS Defendant's Motion for the reasons set forth below.

## II. BACKGROUND

**A.     Factual Background**

Plaintiff lives in Baton Rouge, Louisiana. FAC ¶ 1. VanDyk is a Michigan Corporation that provides mortgage services, with offices in Northern California, as well as in Las Vegas, Nevada. *Id.* ¶¶ 4, 5. VanDyk is licensed as a mortgage lender, broker, and originator in California. *Id.* ¶ 4. Plaintiff obtained a first mortgage loan from VanDyk in 2006 and a refinance in 2011. *Id.* ¶ 40.

From October 2007, through August 2011, VanDyk employed Defendant Dianne Cobb

1  ("Cobb") as a branch manager of VanDyk's Mill Valley and Larkspur branches.  *Id*. ¶ 10.

2  Subsequently, from August 2011, until December 31, 2012, Cobb was the branch manager of

3  VanDyk's Las Vegas office.  *Id*.  During this time, Cobb held a California mortgage loan

4  originator's license.  *Id*.

5        Cobb also was the co-owner of DM Financial, located in Marin County, California, which

6  she founded with co-defendant Paul Sloane Davis ("Davis") in 1995.  *Id.* ¶ 12.  Cobb continued to

7  operate DM Financial during her employment with VanDyk.  *Id.* ¶ 9.  DM Financial arranged

8  bridge mortgages to facilitate the relocation of persons from one location to another, usually at the

9  behest of corporate or government employers.  *Id*. ¶ 14.  The funding for these bridge mortgages

10 was provided by investors such as Plaintiff, who alleges that his investments into DM Financial

11 were wrongfully and/or unlawfully converted during the time Cobb was an employee of VanDyk.

12 *Id*. ¶ 36.

13       Plaintiff alleges that "during the approximate period of February 9, 2011 to December 31,

14 2012, [he] forwarded no less than $150,000 to Cobb and Davis in order to participate in no fewer

15 than six bride loans secured by second deeds of trust and promissory notes prepared by

16 Defendants Cobb [and] Davis…"  *Id*. ¶ 18.

17       Plaintiff believes that "the acts of Diane Cobb, an officer and employee of VanDyk, were

18 at all times sourced, performed, perpetuated, and closed by [Cobb] as a direct part of her scope of

19 employment as a branch manager of VanDyk."  *Id*. ¶ 27. Further, VanDyk permitted Cobb, "in her

20 branch managerial functions as an employee of [VanDyk]. . . to retain the name "DM Financial"

21 in order to retain her clientele and develop new, private second mortgage sources."  *Id*. ¶ 52(a).

22      "[A]s a highly regulated mortgage lending institution," Plaintiff alleges that VanDyk owed

23 "a statutory duty of care to its customers and to the borrowing public generally, among which the

24 Plaintiff was included in both categories, to carefully investigate  and otherwise vet their

25 prospective branch managers before hiring them." *Id*. ¶ 76.  "This duty of care included making

26 certain that such prospective employees, managers, branch officials, and officers discontinued any

27 prior independent and/or previous outside mortgage origination and/or independent lending

28 activities in favor of working **exclusively** for and on behalf of VanDyk's banking and/or mortgage

1   operations." *Id*. (emphasis in original).  Plaintiff also alleges that VanDyk owed him a fiduciary
2   duty of care as his lender, as Plaintiff obtained a first mortgage loan from VanDyk in 2006 and a
3   refinance in 2011.  *Id. ¶* 40.  Despite the existence of a duty of care, Plaintiff alleges VanDyk "was
4   on full notice, **actual and constructive**, that Cobb was continuing on with [DM Financial], but
5   chose to ignore such activities." *Id.* ¶ 96 (emphasis in original).

6   Plaintiff alleges that VanDyk "breached its professional duties of care to Plaintiff and to
7   the general borrowing public by failing to conduct a thorough investigation, before and during the
8   employment of [Cobb], into the structure, organization, and activities of [Cobb] dba DM
9   Financial, including but not limited to the role and activities of [Davis].". *Id*. ¶ 94.  Thus, "the
10  likelihood that Cobb would continue her previously independent business as DM Finance after her
11  hiring by VanDyk was high if not a certain likelihood," since Cobb was required to have an active
12  roster of existing clients to become accepted as a "branch" office of VanDyk.  *Id*. ¶¶ 54, 85, 86.
13  On this basis, Plaintiff alleges that VanDyk, in failing to discover Cobb's "illegal net branch
14  scheme," was grossly negligent.  *Id.* ¶ 98.

15  Plaintiff further alleges that as part of their scheme to defraud him, Cobb and Davis forged
16  promissory notes and deeds of trust, which were sent to investors as evidence that the loans had in
17  fact been made.  *Id*. ¶¶ 18, 32.  However, beginning in April 2012, payments from Cobb and Davis
18  to Plaintiff became sporadic and then stopped.  *Id*.  Ultimately, Cobb and her associates were
19  indicted for wire and mail fraud, and identity theft by a federal grand jury.  *Id*. 30.

20  **B.    Procedural Background**

21  Plaintiff originally filed this lawsuit in Marin County Superior Court on July 16, 2013.
22  Not. of Rem., Dkt. No. 1, Ex. A (Compl.).  On August 16, 2013, VanDyk removed the action to
23  this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, 1441(a), and 1446.  *Id*.

24  On November 18, 2013, the Court granted VanDyk's motion to dismiss the claim for
25  professional negligence against VanDyk with leave to amend.  Order, Dkt. No. 32.  On February
26  9, 2014, Plaintiff filed the FAC, in which he asserts claims against Cobb and Davis for: (1)
27  accounting; (2) breach of fiduciary duty; (3) conversion; (4) common count; (5) fraud and deceit.
28  FAC ¶¶ 37-73.  In addition to asserting a claim for professional negligence against VanDyk,

United States District Court
Northern District of California

Plaintiff also asserts four new claims against VanDyk for: (1) breach of fiduciary duty; (2) violation of Business and Professions Code sections 17200 and 17500; (3) aiding and abetting breach of fiduciary duty; and (4) aiding and abetting fraud. *Id*. ¶¶ 39-59; 74-132.

VanDyk now moves to dismiss Plaintiff's claims against it on the grounds that: (1) Plaintiff has not and cannot plead sufficient facts to maintain a negligence claim because he cannot establish that VanDyk owed him a duty of care; (2) the remaining causes of action asserted against VanDyk were improperly added because they exceed the scope of the Court's prior Order granting VanDyk's motion to dismiss; and (3) even if permissibly added, these causes of action are insufficient to state a claim. Mot. at 1-4.

Plaintiff filed an untimely Opposition on April 2, 2014.[1] In the Opposition, Plaintiff elects to proceed on a single cause of action for negligence, and dismisses the Second, Fifth, Eighth,

---

[1] In the Opposition, Plaintiff requests that the Court take judicial notice of the exhibits attached to the Opposition and also those attached to the FAC. Opp'n at 8. Defendant does not object to the request. Exhibits A-D to the Opposition consist of: (1) the reporting requirements of the NMLS website (Ex. A); (2) the NMLS Policy Guidebook as updated July 23, 2012, taken from the official NMLS website (Ex. B); (3) excerpts from the Nov. 8, 2013 deposition of Anthony Richard Cobb in this case (Ex. C); and (4) various unlabeled emails and loan documents (Ex. D). Exhibits A and B are matters of public record, provided by a government agency for public review, and accordingly the Court GRANTS the request to take judicial notice of these exhibits pursuant to Federal Rule of Evidence 201. *See Hansen Beverage Co. v. Innovation Ventures, LLC*, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) (court may take judicial notice of documents made available to the public on government agency websites). The request for judicial notice of Exhibits C and D is DENIED as moot as the identical documents are attached to the FAC.

Exhibits A -L to the FAC consist of: (1) various emails purporting to show the interchangeable use of DM Financial and VanDyk (Ex. A); (2) May 21, 2000 letter from the U.S. Department of Housing and Urban Development regarding Prohibited Branch Arrangements (Ex. B); (3) text of the Secure and Fair Enforcement for Mortgage Licensing ("S.A.F.E. Act), 12 USC 5101, et seq. (Ex. C); (4) Mortgage Broker Compliance Checklist from a "Mortgage Broker Compliance Evaluation Manual" (Ex. D); (5) screen shots of VanDyk's advertising for branch offices, date unknown (Ex. E); (6) screen shots of VanDyk's active pipeline solicitations, date unknown (Ex. F); (7) excerpts from the November 8, 2013 deposition of Anthony Richard Cobb (Ex. G); (8) a purportedly "false document" and email from Cobb to plaintiff Steve Thieme, case no. 13-cv-3827-MEJ (Ex. H); (9) various documents under the title "Mixing VanDyk with DM Finance" (Ex. I); (10) portions of an unsigned letter dated October 18, 2012 from the Consumer Finance Protection Bureau re:"disciplinary action functionality added to the Nationwide Mortgage Licensing System and Registry" (Ex. J); (11) pertinent selections of the "FHA Title II Mortgage Approval Handbook" dated August 14, 2006 (Ex. K); (12) text of Regulation G (the implementing regulation of the S.A.F.E. Mortgage Act), 12 C.F.R, 1007 (Ex. L). Dkt. Nos. 62-67. The request to take judicial notice of these Exhibits is GRANTED. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007) (court may consider exhibits attached to the complaint when ruling on a motion to dismiss).

4

Seventh, Ninth, and Tenth Causes of Action. Opp'n at 7.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

1   common sense." *Id.* at 679.

2   If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
3   request to amend the pleading was made, unless it determines that the pleading could not possibly
4   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
5   banc) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

### A.  Sixth Claim: Professional Negligence

Plaintiff asserts a single cause of action against VanDyk for negligent supervision, hiring, and oversight of Cobb. FAC ¶¶ 74-100. The essence of Plaintiff's claim is that VanDyk had a duty to initially investigate Cobb's fitness to serve as branch manager, and thereafter to continuously supervise Cobb's activities both as branch manager at VanDyk and as principal of DM Financial to ensure that they complied with applicable state and federal regulations. Opp'n at 9-11. He alleges that VanDyk's failure to take such actions resulted in the foreseeable loss of the money he invested in Cobb's bridge loan scheme. *Id*. at 13.

Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (citing *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). In the employment context, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Tech., Inc*., 145 Cal. App. 4th 790, 815 (2006). "Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id*. "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." *Id*.

In its prior Order, the Court granted VanDyk's motion to dismiss this cause of action because Plaintiff failed to establish that VanDyk owed him a duty of care. Order Granting Mot. to

Dismiss at 7, Dkt. No. 32.  As discussed below, even with the new allegations, the FAC is again deficient in this regard.

California courts apply the seven-factor *Rowland* test to determine whether a duty exists that would support a finding of negligence. *Rowland v. Christian*, 69 Cal.2d 108, 113 (1968) (overruled in part on other grounds).  Specifically, courts examine the following factors to determine whether a duty exists: "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of the connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved." *Id*.  A finding of no duty must be based on a complete analysis of all of the *Rowland* factors.  *Henderson v. United States*, 846 F.2d 1233, 1236 (9th Cir. 1988).  "Absent the existence of duty ... there can be no breach and no negligence." *Nichols v. Keller*, 15 Cal. App. 4th 1672, 1683 (1993).

### 1. Plaintiff Has Not Established that VanDyk Owed Him a Duty of Care

VanDyk argues that Plaintiff fails to state a cause of action for negligent hiring or supervision because he cannot establish that VanDyk owed Plaintiff a duty of care for acts stemming from Cobb's independent tortious conduct to a third party.  Mot. at 10-11.  VanDyk also maintains that Plaintiff has not cured any of the flaws in this cause of action that the Court previously identified in the November 18, 2013 Order granting VanDyk's motion to dismiss the original Complaint.  *Id*. at 12-13.

Plaintiff counters that VanDyk owed him a duty of care because he had obtained two mortgages from VanDyk, and VanDyk knew that Cobb continued to operate DM Financial during her employment.  Opp'n at 10-11.  Thus, Plaintiff argues, VanDyk had a continuing duty to supervise, inspect and audit Cobb's work at both VanDyk and DM Financial for the protection of its customers.  *Id.*  For the reasons set forth below, the Court disagrees with Plaintiff.

#### a. *Foreseeability*

The most important *Rowland* factor is foreseeability.  *Henderson*, 532 F. Supp. 2d at 1231.

7

In deciding the question of foreseeability in the context of legal duty, a court's task in determining duty "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1839 (1993) (quoting *Ballard v. Uribe*, 41 Cal.3d 564, 573 n. 6 (1986)). An employer's duty to third parties for the actions of its employees is limited. *See Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 58 (1998).

With regard to this factor, Plaintiff has still not alleged that Cobb's conduct was foreseeable to VanDyk. In the prior Order granting VanDyk's Motion to Dismiss the Complaint, the Court found that Plaintiff failed to allege that: (1) he was a customer or had any direct business dealings with VanDyk; (2) VanDyk knew of Plaintiff, his interaction with Cobb or DM Financial, or his decision to repeatedly invest his money with Cobb and DM Financial; (3) Cobb had previously been involved in impermissible activity such that VanDyk would have been on notice that Cobb presented such a risk to customers; (4) VanDyk was on notice of Cobb's operation of DM Financial such that it failed to take either preventative or disciplinary actions against Cobb. *See* Order at 5. The Court also found that allegations that (1) Cobb's name and email address using DM Financial were discoverable on the internet; and (2) that Cobb used VanDyk's computers and answered the phone as VanDyk were insufficient to demonstrate that Cobb was engaged in any business that presented a conflict or potential risk to Plaintiff. *Id*. at 5-6. Yet, Plaintiff makes no new allegations sufficient to overcome these hurdles.

Plaintiff argues that a number of regulations such as the S.A.F.E. Act and the NMLS reporting requirements created a statutory duty of care to monitor Cobb's activities. Opp'n at 12.[2] Particularly, Plaintiff alleges that Cobb was required to "closely adhere to VanDyk's federally-mandated mortgage lending standards and practices and was subject to and bound by all applicable federal and state rules and regulations governing the mortgage lending industry … including the

---

[2] Plaintiff asserts that "the NMLS forbids" dual roles of Branch manager and outside partner in a related business, but does not provide any authority for this claim.

8

proscription against maintaining outside business activities in the mortgage lending, real estate, and related fields, of which arranging second mortgage financial was one. FAC ¶ 86. Plaintiff refers to Exhibits C, K, and L, which contain the text of the S.A.F.E. Act, its implementing regulation, and sections of the FHA Title II Mortgage Approval Manual. *Id.* None of these regulations create a duty of care to Plaintiff. First, the S.A.F.E. Act and NMLS implemented the creation of a central repository for licensing information, and do not provide any regulation of mortgage lending. *See, e.g.* 12 C.F.R. § 1007.101(b) ("This part implements the S.A.F.E. Act's Federal registration requirement for mortgage loan originators."). Second, the purpose of the HUD/FHA rules for branch offices offering FHA loans is to prevent the origination of insured mortgages by lenders that have not received HUD/FHA approval, which increases the risk to the FHA insurance funds and to the public. *See* May 1, 2000 HUD/FHA Ltr. re: Prohibited Branch Arrangements, Ex. B to FAC, p. 2. The FHA rules were not promulgated to prevent unscrupulous mortgage brokers from engaging in fraudulent side businesses, and do not set forth a standard of care for the operation of mortgage branch offices.

In the same vein, Plaintiff alleges that VanDyk's branch office was an "illegal net branch" under HUD/FHA regulations, and that VanDyk had a fiduciary duty to prevent this situation for Plaintiff's protection. FAC ¶ 50. In so arguing, Plaintiff again relies on the FHA Title II Mortgage Approval Handbook (Ex. K to FAC) and the May 1, 2000 HUD letter regarding prohibited branch arrangements (Ex. B to FAC). None of the prohibited branch operations outlined in these documents are applicable under the current facts alleged. For instance, Plaintiff alleges that "Cobb was allowed to originate third party mortgages independently." FAC ¶ 94. However, the cited FHA regulations are intended to prohibit approved mortgagees (i.e., VanDyk) from taking on an existing, separate mortgage company or broker (i.e., Cobb) as a branch and allowing that separate entity to originate insured mortgages under the approved mortgagee's HUD Mortgagee Number. *See* Ex. B to FAC, p. 1. Plaintiff does not allege that Cobb originated FHA loans for VanDyk, or that VanDyk's oversight of Cobb's FHA activities, if any, would have prevented the harm he suffered via his investments in DM Financial. The same holds true for Plaintiff's allegation that that "[t[he operating expenses, such as the salary of Tony Cobb, was met

in part by [Cobb's] personal account, e.g. DM Finance [sic]." FAC ¶ 94. FHA regulations prohibit a branch from paying any of its own operating expenses. Since Tony Cobb worked in part for DM Financial, it was appropriate for Cobb to pay him for his work from separate funds. *See* Ex. G to FAC ("Tony Cobb Depo.") at 40:8-9. However, even if Cobb was in violation of these two FHA rules, it is highly unlikely that oversight of Cobb's compliance with FHA branch regulations by VanDyk would have prevented third party losses incurred by investing in Cobb's independent bridge loan business.

      b.   *Closeness of Connection Between VanDyk's Conduct and Plaintiff's Injury*

With regard to this factor, Plaintiff again alleges that VanDyk's lack of scrutiny of Cobb's operation of DM Financial between 2007 and 2012 caused Plaintiff's loss of his investments. Opp'n at 13. Although Plaintiff adds some new allegations purporting to establish that VanDyk knew or should have known of her continued operation of DM Financial, the allegations are insufficient to establish a connection between VanDyk's conduct and Plaintiff's injury.

In its previous Order, the Court found that allegations that Cobb was acting outside the scope of her employment and in violation of VanDyk's internal operating rules demonstrated that VanDyk's conduct was not closely connected to Plaintiff's injury. Order at 6. Plaintiff now alleges that Cobb was acting within the scope of her employment with VanDyk by operating DM Financial. FAC ¶¶ 27. However, the supporting allegations demonstrate that only Cobb was aware of the connection: "[Cobb] led [Plaintiff] to believe that Vandyk, by virtue of its employment of [Cobb] as its branch manager and officer, knew of, approved, and ratified [Cobb's] [DM Financial] transactions…" *Id.* ¶ 26 (emphasis removed). Plaintiff invested in DM Financial based on his "perception that the second mortgages promoted by Cobb were part of the scope of employment of Cobb with Vandyk.". *Id.* ¶ 79.

Plaintiff also alleges that VanDyk knew Cobb would continue to operate DM Financial because VanDyk required Cobb to have an active pipeline when she opened her branch offices. *Id.* ¶ 54. Based on this allegation, Plaintiff argues that the fact that DM Financial was the source of Cobb's active pipeline establishes VanDyk's knowledge of Cobb's activities. Opp'n at 17. However, the fact that VanDyk expected Cobb to bring an active pipeline of leads with her from

her previous business does not lead to a plausible inference that VanDyk knew or should have known that Cobb would continue to operate that business once hired.  Accordingly, Plaintiff has still not set forth any allegations indicating that Cobb's act of operating a business engaged in arranging bridge financing was part of her job duties at VanDyk; that VanDyk directed her to engage in that business; or that VanDyk profited from Plaintiff's investment.  *See* Order at 6.

Plaintiff did add one new allegation that he obtained several mortgages from VanDyk, and was thus a customer to whom VanDyk owed a duty of care.  FAC ¶¶ 40, 42-44.  However, it appears that Plaintiff was actually a customer of DM Financial in 2006, not VanDyk.  FAC ¶ 40 (Cobb began her employment with VanDyk in October of 2007); Ex. A to FAC, p. 1-2; *see also* Cobb Depo. at 36:13-24, attached to FAC as Ex. G. (Tony Cobb did not begin work as a loan processor for VanDyk until 2007, when Cobb opened the branch).  Further, it appears that Plaintiff's relationship as a mortgage borrower with VanDyk concluded in October of 2010 when he obtained his refinance, many months before he began investing in DM Financial bridge loans.  Ex. A to FAC, p. 12-21; FAC ¶ 18.  Consistent with these facts, Plaintiff argues in his Opposition that "Thieme was not a first mortgage borrower from VanDyk, but he was a second mortgage investor in what he believed was an ancillary activity of VanDyk."  Opp'n at 14.  As VanDyk correctly argues in its Motion, "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature."  Mot. at 16 (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 fn 1 (1991)).  The Court finds that as alleged, VanDyk thus had no special relationship with Plaintiff after he obtained his loan.

Last, as the Court previously explained, "the fact that VanDyk supplied Cobb with an office and computer to carry out her duties as a VanDyk employee [does not] demonstrate any connection between VanDyk and Plaintiff's decision to invest his money with DM Financial."  Order at 6-7 (citing *Delfino*, 145 Cal. App. 4th at 816).

    *c.*  *The Moral Blame Attached to the Defendant's Conduct*

Courts have found that this factor favors the imposition of a duty "where the defendant (1) intended or planned the harmful result ...; (2) had actual or constructive knowledge of the harmful consequences of their behavior ...; (3) acted in bad faith or with a reckless indifference to the

results of their conduct ...; or (4) engaged in inherently harmful acts...." *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 270 (1998). Plaintiff contends that VanDyk's lack of scrutiny of Cobb's outside activities satisfies this factor. Opp'n at 13. However, on this element, Plaintiff again lacks any factual support in the FAC. There are no allegations indicating that VanDyk was on notice of Cobb's operation of DM Financial such that it failed to take either preventative or disciplinary actions against Cobb, or that VanDyk authorized Cobb's conduct. *See* Order at 7. Thus, there is no basis to attach moral blame for Plaintiff's loss to VanDyk.

### d. *Prevention of Future Harm*

Plaintiff fails to address the policy of preventing future harm. However, as there are no allegations in the FAC indicating that VanDyk was aware of Cobb's activities or knew that she was taking investments from unknown individuals such as Plaintiff, this factor weighs against Plaintiff. Instead, as Plaintiff acknowledges, Cobb's activities as part of DM Financial were actually outside the scope of her employment with VanDyk, contravened VanDyk's internal policies, and violated lending regulations. FAC ¶ 34 ("…as an employee, officer, and branch manager of VANDYK, defendant COBB was not permitted to engage or participate in the practice of such ancillary or outside lending activities]" pursuant to various lending regulations.

### e. *Extent of Burden to Defendant and Consequences to the Community of Imposing a Duty to Exercise Care with Resulting Liability for Breach*

With regard to this factor, Plaintiff argues that "the burden on VanDyk to supervise Cobb's activity was minimal." Opp'n at 13. The Court disagrees. Finding that a duty exists between VanDyk and Plaintiff – who had no relationship with VanDyk – would create indeterminate liabilities on the part of VanDyk to an indeterminate number of people for acts outside its employees' scope of employment. *See Delfino*, 145 Cal. App. 4th at 816 ("It would be a dubious proposition indeed to suggest that a party, simply by virtue of engaging in business, owes a duty to the world for all acts taken by its employee, irrespective of whether those actions were connected with the enterprise in which the business was engaged.").

### f. *The Availability, Cost, and Prevalence of Insurance for the Risk Involved*

Neither party provides any argument on this factor, although Plaintiff notes that VanDyk

maintained insurance coverage. Opp'n at 14.

2. Summary

Taking the foregoing *Rowland* factors into consideration, the Court finds that Plaintiff has again failed to set forth allegations demonstrating that VanDyk owed a duty of care to Plaintiff. Plaintiff has not alleged any facts indicating that Plaintiff's injury was foreseeable, that it was connected to the operation of VanDyk's business, or suggesting that VanDyk is morally culpable for Plaintiff's loss. Finding that a duty exists in this scenario would unreasonably burden VanDyk by forcing it to guard against any conduct by its employees involving any person; rather than conduct that is related to the employee's duties. Because Plaintiff has not set forth allegations to support the duty element of his negligence claim, the Court once again finds it is subject to dismissal. The Court therefore GRANTS VanDyk's Motion to Dismiss Plaintiff's claim for professional negligence WITHOUT PREJUDICE. If Plaintiff chooses to file an amended complaint, Plaintiff must allege additional facts supporting the elements discussed above.

## V. CONCLUSION

For the foregoing reasons, the FAC as currently pled fails to cure the deficiencies identified in the Court's prior Order. Accordingly, the Sixth Cause of Action is DISMISSED WITH LEAVE TO AMEND by October 2, 2014.

As Plaintiff elects to proceed on a single cause of action for negligence, and agrees to dismiss the Second, Fifth, Seventh, Eighth, Ninth, and Tenth Causes of Action, those causes of action are DISMISSED WITHOUT PREJUDICE at this time. The addition of these causes of action exceeded the scope of the Court's prior Order granting Defendant's Motion to Dismiss, which did not grant Plaintiff permission to add new claims. Accordingly, Plaintiff must obtain leave of Court in the event he seeks to amend his complaint to add these causes of action at a later date.

**IT IS SO ORDERED.**

Dated: September 15, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge