UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE THIEME,<br><br>   Plaintiff,<br><br> v.<br><br>DIANE M. COBB, et al.,<br><br>   Defendants. | Case No. 13-cv-03827-MEJ<br><br>**ORDER RE: MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS** |
| CYNTHIA CHENAULT,<br><br>   Plaintiff,<br><br> v.<br><br>DIANE M. COBB, et al.,<br><br>   Defendants. | Case No. 13-cv-03828-MEJ |
| LEWIS HAYNES,<br><br>   Plaintiff,<br><br> v.<br><br>DIANE E. COBB, et al.,<br><br>   Defendants. | Case No. 15-cv-02455-MEJ |

**INTRODUCTION**

In each of these three related cases, Plaintiffs seek leave to amend the Complaints to add a single cause of action against Defendant VanDyk Mortgage Corporation's ("VanDyk") for alleged violations of California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200, and False Advertising Law, Business and Professions Code section 17500,[1] as well

---

[1] The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. Cal. Bus. &

as related corrections and clarifications to the Preliminary Facts and Allegations. *See* Mots. for Leave to Amend ("Mots.").[2] Plaintiffs also initially sought leave to add a cause of action "sounding in Deceit and Concealment pursuant to California Civil Code Sections 1709, 1710, and 1711[,]" (Notices of Mots. at 2), but abandoned those claims according to their Replies. *See* Replies[3] at 16 ("Plaintiff[s] drop[] [their] earlier proposed cause of action for fraud by way of concealment as not necessary under the circumstances"). However, the Replies also indicate Plaintiffs seek to add prayers for relief for attorney's fees pursuant to California Civil Code section 1021.5. *Id.* As Plaintiffs did not request leave to amend on grounds related to section 1021.5, and VanDyk did not have an opportunity to respond, the Court shall not consider this request.[4] *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief"). Accordingly, the Court only considers whether Plaintiffs may add a cause of action under the UCL.

Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Plaintiffs' Motions to add a UCL claim and related factual background for the reasons set forth below.

---

Prof. Code § 17200. Thus, "'[a]ny violation of the false advertising law' necessarily violates the UCL." *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *3 (C.D. Cal. Apr. 11, 2011) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 928 (9th Cir. 2008)). As Plaintiffs assert only one cause of action for violations of California's Business and Professions Code, the Court shall refer to Plaintiffs' proposed cause of action as their "UCL claim" or "UCL cause of action."

[2] *See* Mot. for Leave to Amend, *Thieme v. Cobb et al.*, Case No. 13-3827 ("Thieme Action"), Dkt. No. 144 (N.D. Cal. filed May 18, 2016); Mot. for Leave to Amend, *Chenault v. Cobb et al.*, Case No. 13-3828 ("Chenault Action"), Dkt. No. 114 (N.D. Cal. filed May 19, 2016); and Mot. for Leave to Amend, *Haynes v. Cobb et al.*, Case No. 15-2455 ("Haynes Action"), Dkt. No. 50 (N.D. Cal. filed May 19, 2016). After a series of filing errors starting on May 5, 2016, Plaintiffs filed the operative versions of their Motions for Leave to Amend on May 18 and 19, 2016.

[3] *See* Reply, Thieme Action Dkt. No. 158; Reply, Chenault Action Dkt. No. 128; Reply, Haynes Action Dkt. No. 64.

[4] Additionally, in the Thieme Action, Plaintiff filed his proposed Third Amended Complaint without obtaining leave to amend. *See* Third Am. Compl., Dkt. No. 142. It appears this may have been a filing error, but in any event, the Court did not authorize the filing of that document and thus **STRIKES** it from the record.

# BACKGROUND

**A.  Factual Background**

The following allegations are found in Plaintiff Steve Thieme and Cynthia Chenault's Second Amended Complaints and Plaintiff Lewis Haynes' initial Complaint.  *See* Second Am. Compl., Thieme Action Dkt. No. 95; Second Am. Compl., Chenault Action Dkt. No. 67; Compl., Haynes Action Dkt. No. 1.

From 2009 to 2012, Defendant Diane Cobb was a branch manager for VanDyk Mortgage in its Mill Valley and Larkspur, California, and in its Las Vegas, Nevada offices.  Prior to the time she began working with VanDyk, Cobb and her business partner, Defendant Sloane Davis, originated and arranged residential "bridge" loans under the name DM Financial.  Essentially, Cobb found investors willing to fund short-term loans to borrowers at high rates of interest, ostensibly secured by second deeds of trust and promissory notes.  Cobb promised high interest yields of ten to eleven and a half percent, and the return of the monetary investment at the end of the short-term loan.  As part of this arrangement, investors sent money to Cobb, who then breached her fiduciary duty "by failing to account for these funds, and/or by defrauding [them], and/or by converting the money entrusted to [Cobb and Davis]."  Plaintiffs allege the deeds of trust and promissory notes were often forged, with the money diverted "to the use and benefit" of Cobb and Davis.

While employed by VanDyk, Cobb continued doing business as a loan originator, arranger, and servicer for second mortgages under the DM Financial name.  Plaintiffs allege Cobb disclosed her involvement with DM Financial to VanDyk during the hiring process, and allege that the terms of her employment agreement provided that Cobb "would be able to and was encouraged to continue the business of originating second mortgage bridge loans, underwritten by a Van[D]yk salary and/or commission arrangement, although not derive direct profits or points or fees from such origination or servicing activities, thus avoiding potential conflicts of interest with her investor or with Van[D]yk."  Plaintiffs allege that arranging bridge financing was "part and parcel" of Cobb's job with VanDyk, but that she was expected to pursue those activities under the DM Financial name, with the idea that the bridge loans would lead to approved first mortgage

applications with VanDyk. During that time, Cobb paid her staff to work in the VanDyk offices, commingled the offices, equipment, credit-checking references, and other services of her separate loan activity with those of VanDyk, and engaged in these activities at the same time she was working for VanDyk as branch manager.

Plaintiffs allege that "Van[D]yk, as an integral part of its business model did in fact maintain, approve, condone, substantially encourage, aid, and abet, and ratify the establishment of a prohibited [] branch in the offices maintained by Van[D]yk and Cobb in Marin County, California and in Las Vegas, Nevada, commencing in 2008, and continuing thereafter." They contend VanDyk was required to vet Cobb's background and qualifications and exercise close oversight and supervision of all her loan origination activities. They also allege VanDyk owed them a "statutory duty of care" by virtue of mortgage and banking industry regulations:

> Van[D]yk's duties of professional care as a mortgage banker/broker/loan originator in the field of mortgage banking were and remain defined by a plethora of Federal statutes including the Dodd-Frank Wall Street Reform and Consumer Protection Act (July 21, 2010); the Housing and Economic Recovery Act of 2008, including the Secure and fajr Enforcement of Mortgage Lending Act (SAFE) 12 USC Chapter 51, (July 30, 2008); Truth in Lending Act (TILA) (l5 USC 1602); Real Estate Settlement Procedures Act (RESPA) (12 USC 2607), by the NMLS [National Mortgage License System and Registry] policies, regulations, and rules, and by the written regulations, rules, handbooks, and policies of a number of Federal departments, including Housing and Urban Development (HUD (the Federal Housing Administration (FHA)) and the Veteran's Administration (VA), the Office of the Comptroller of the Currency, Fannie Mae, Freddie Mac, the Bureau of Consumer Finance Protection Bureau (CFPB), and the Federal Reserve System (including the independent CFPB) but not only limited to these agencies.

Sec. Am. Compl. ¶¶ 105-27, Thieme Action; Sec. Am. Compl. ¶¶ 105-27, Chenault Action; *see also* Compl. ¶¶ 105-27, Haynes Action (errors in original).

**B.     Procedural Background**

VanDyk removed the Thieme and Chenault Actions from Marin County Superior Court on August 16, 2013. Not. of Removal, Thieme Action Dkt. No. 1; Not. of Removal, Chenault Action Dkt. No. 1. On March, 31, 2015, the Court denied VanDyk's Motions to Dismiss Plaintiff Thieme and Chenault's negligence claims against it. Order re: Mot. to Dismiss, Thieme Action Dkt. No.

4

1  101; Order re: Mot. to Dismiss, Chenault Action Dkt. No. 73. Plaintiff Haynes filed his action on
2  June 2, 2015. Haynes Action Dkt. No. 1.

3  All three Plaintiffs now seek to amend their Complaints, explaining "[n]ow that significant facts based on deposition and written discovery, and intense investigation into applicable Federal and California laws, the proposed amended complaint is properly presented for the Court's consideration." Mots. at 9. Plaintiffs cite large portions of Cobb's deposition testimony, taken earlier this year, and argue she testified that she told VanDyk officials and staff that she had a company, D.M. Financial, that continued to operate after she became an employee of VanDyk Mortgage and that she submitted documentation in the form of underwriting notes and deeds of trust showing D.M. Financial was still in business. *Id.* at 6. Plaintiffs also note that in the deposition of Corey Hill, Cobb's recruiter and area representative, Hill testified that VanDyk continued to allow Cobb to use a D.M. Financial email address, the D.M. Financial telephone number, the name D.M. Financial, the offices of D.M. Financial, the facsimile address of D.M. Financial, and the staff that had worked for D.M. Financial, among other things. *Id.* at 7.[5] Plaintiffs explain that they were only finally able to conduct Cobb's deposition on February 15, 2016, after she was formally sentenced for criminal charges in another matter. *Id.* at 8. VanDyk opposes Plaintiffs' Motions, contending their delay is undue and will prejudice it. *See* Opp'ns.[6]

**LEGAL STANDARD**

Outside of Federal Rule of Civil Procedure ("Rule") 15's permissive amendment timeline, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted). A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and

---

[5] Plaintiffs did not provide any of the actual deposition transcripts.
[6] *See* Opp'n, Thieme Action Dkt. No. 157; Opp'n, Chenault Action Dkt. No. 127; Opp'n, Haynes Action Dkt. No. 63.

(5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend." *Id.* at 1052 (emphasis in original). "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

## DISCUSSION

Having reviewed Plaintiffs' proposed amended complaints, the Court concludes that there is significant overlap between the negligence claims already asserted against VanDyk and the newly proposed UCL claims. This highlights two issues. First, it appears Plaintiffs generally knew the basis for their UCL claims since filing their cases—even if Cobb's deposition and other VanDyk depositions add some new or supporting facts. Plaintiffs admit the "Thieme and Chenault Actions were initially filed in Marin Superior Court," which "all involved a cause of action for violation of Business and Professions Code Sections 17200 and 17500[,]" and the state court "allowed a cause of action for violation of B&P Code Sections 17200 and 17500" after "series of demurrers and motions to dismiss." Replies at 3, 7.[7] Moreover, Plaintiff Thieme and Chenault's Second Amended Complaints, filed in February 2015, assert negligence claims against VanDyk containing allegations about VanDyk's "duties of professional care" based on virtually identical regulations, rules, and policies Plaintiffs seek to assert now as bases for UCL violations.

---

[7] Plaintiffs' counsel, however, dismissed these claims because "he had not expected [the UCL claims] to be allowed" and he "decided, in order finally to settle the pleadings and permit discovery to begin, to omit [the UCL claims] when the amended complaints in Thieme and Chenault were filed, along with the Haynes case in 2015." Replies at 7 (emphasis omitted).

*See* Mots. at 9 (arguing the UCL claims "relate back to the original pleadings as the factual averments stated therein are equally applicable to the new causes of action. Only the theories of liability, and to a certain extent, the relief sought, are different." (citation omitted)). Second, given the foregoing, it appears that VanDyk has had notice of the substance of the allegations and basis for Plaintiffs' proposed UCL claims for quite some time. Thus, it appears that both Plaintiffs and VanDyk have known the basis of Plaintiffs' proposed UCL claims for years.

        The case law under such circumstances is somewhat conflicting. The Ninth Circuit has recognized that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("[A] district court does not abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only "new theories" and provided no satisfactory explanation for his failure to fully develop his contentions originally." (some internal marks omitted) (quoting *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 570-71 (9th Cir. 1987) and *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982))). However, in other opinions, the Ninth Circuit also has recognized that "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 665 F.2d 977, 980 (9th Cir. 1981); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712-13 (9th Cir. 2001) ("'[U]ndue delay by itself . . . is insufficient to justify denying a motion to amend.'" (quoting *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999)).

        The Ninth Circuit encountered a somewhat similar situation in *Hall v. City of Los Angeles*, 697 F.3d 1059 (9th Cir. 2012), where it sua sponte considered whether the district court abused its discretion in denying the plaintiff leave to amend. The Court of Appeals ultimately found the district court had abused its discretion by refusing to allow the plaintiff to assert a claim, particularly where the earlier complaint gave the defendants "fair notice" of the facts supporting that claim and where "it is questionable whether amendment would have required additional discovery, given the extensive discovery the parties had conducted already." *Id.* at 1072-73 ("While Hall did not identify an explicit Fifth Amendment claim, his 2005 complaint alleged facts

7

that form the basis of a classic coerced confession claim . . . . On the record before us, we cannot conclude that amendment of the complaint would cause Appellees undue prejudice."). The Ninth Circuit further noted, however, that in "[a]n ordinary case in which counsel neglected to allege an obvious claim in a pleading" it would not "feel compelled to find an abuse of discretion," but explained that it was "not called to consider an ordinary case, but, rather, an extraordinary one involving an unfortunate confluence of events—events not fit for a just and fair society." *Id.* at 1073; *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 2015 WL 8482753, at *3 (S.D. Cal. Dec. 8, 2015) (distinguishing *Hall* and noting "the Ninth Circuit, to avoid a serious manifest injustice, sua sponte remanded the case based on the district court's error" but finding "[s]uch manifest injustice [was] not present" in that case).

Ultimately, the Ninth Circuit's guidance in *Hall* is unclear about how courts should consider less extraordinary circumstances than those present in that case. Nonetheless, its analysis about the prejudice to defendants where "fair notice" is given about the basis for those claims is instructive, particularly where it is "questionable" whether amendment would require additional discovery. Similar considerations have led courts to deny late-filed amendments where a plaintiff seeks to significantly *change* theories of liability without sufficient explanation. *See Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1324 (9th Cir. 1982) (finding no abuse of discretion where district court explicitly found plaintiff's amendment would have prejudiced defendant by requiring it to engage in further discovery since proposed amendment raised substantial issues of state law "not closely connected" with the issues raised the federal claims), *cert. granted, judgment vacated on other grounds sub nom. Cty. of L.A. v. Jordan*, 459 U.S. 810 (1982); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (finding undue delay where plaintiff "never provided a satisfactory explanation of why, twelve months into the litigation, it so drastically *changed* its litigation theory" (emphasis added)); *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) ("The new allegations would totally alter the basis of the action, in that they covered different acts, employees and time periods necessitating additional discovery. Finally, a motion for summary judgment was pending and possible disposition of the case would be unduly delayed by granting the motion for leave to amend. These factors form the

basis of a proper exercise of discretion by the trial court in refusing to allow amendment."); *see also Tinker v. Aurora Loan Servs.*, 2015 WL 1540579, at *5 (E.D. Cal. Apr. 7, 2015) (denying leave to amend where "plaintiff has known of the same facts since first filing her case" and "amendment would prejudice defendant who would have to defend and file an answer to an additional nine claims at this late stage.").

While there is no question Plaintiffs delayed in seeking leave to amend their Complaints,[8] the Court's analysis at this point comes down to whether that delay has or will cause VanDyk prejudice and whether Plaintiffs' proposed amendments are futile—there is no argument Plaintiffs seek to amend in bad faith. *See Dogen v. Globalware Sols., Inc.*, 2006 WL 3827545, at *2 (N.D. Cal. Dec. 28, 2006) ("Plaintiff's proposed amendment does not, in substance, contain new allegations, but only a new cause of action based on the same facts and a prayer for statutory fees and costs. It is true that plaintiff delayed in making this amendment, and has failed to explain this delay. Nonetheless, plaintiff's delay in making this amendment has not delayed these proceedings and will not require additional discovery. . . . Further, delay alone cannot justify denying leave to amend." (citing *Owens*, 244 F.3d at 712-13)). The Court ultimately finds that neither futility nor prejudice prohibit the Court from granting leave to amend.

As "[t]he party opposing amendment[,]" VanDyk "bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187. VanDyk argues it will be prejudiced because of the time and expenses associated with the additional discovery Plaintiffs will need to conduct. *See* Opp'ns at 6. "Neither delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party *in itself* constitutes a sufficient showing of prejudice." *Tyco*

---

[8] VanDyk also argues that Plaintiffs unduly delayed in waiting two months to seek leave to amend after Cobb's deposition. *See* Opp'ns at 7-8 (contending that while "Plaintiff[s] claim that Cobb's deposition testimony warranted amendment of the pleadings, . . . [they] ha[ve] not asserted any justification for waiting over two months to seek leave to amend."). The Court does not find the two months an unreasonable delay under the circumstances, particularly as the Court gave Plaintiffs until May 2016 to file such Motions. *See* March 25, 2016 Order, Thieme Action Dkt. No. 129; Chenault Action Dkt. No. 100; Haynes Action Dkt. No. 35; *see also Arce v. Valley Prune, LLC*, 3 F. Supp. 3d 794, 799 (E.D. Cal. 2014) ("Mr. Molarius's declaration gave rise to new facts and Plaintiffs only delayed two months, which, the Court finds is a reasonable delay.").

*Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009) (emphasis added)). VanDyk has not explained how it will be prejudiced aside from the generalized need to participate in further discovery if Plaintiffs are allowed to amend. Even so, VanDyk does not articulate why it believes it will need to conduct significant additional discovery, or what extra discovery it believes Plaintiffs will seek from it. Ultimately, the basis for Plaintiffs' UCL claims all appear rooted in the same facts and theories associated with their negligence claims. Consequently, the Court cannot find VanDyk has met its burden to demonstrate prejudice.

As to futility, "[a] motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation and internal marks omitted). VanDyk asserts Plaintiffs' UCL claims are futile because (1) they fail to allege facts supporting causation under the UCL, and (2) their damages are limited to restitution, which is unavailable since VanDyk never received any of Plaintiffs' money.

First, as to causation, since the passage of Proposition 64 in 2004, a private individual has standing to bring a UCL action only if he or she "has suffered injury in fact and has lost money or property *as a result of* the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). Consequently, to now have standing under the UCL, a plaintiff must show he or she has (1) suffered injury in fact; (2) lost money or property; and (3) show that he or she lost that money "as a result of" the UCL violation. *Id.* "[E]ach element [of standing] must be supported in the same

way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 (2011) (alterations in original; citation omitted). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 310 (citation omitted). In the context of UCL claims brought under the statute's "unlawful" prong, California courts have interpreted the UCL's standing requirement as follows:

> When a UCL action is based on an unlawful business practice, as here, a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party. In short, there must be a causal connection between the harm suffered and the unlawful business activity. *That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.* Here, the lack of causation is illustrated by the fact the tenants would suffer the same injury regardless of whether the owners complied with or violated the Subdivided Lands Act.

*Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1099 (2007) (emphasis added), *as modified on denial of reh'g* (July 3, 2007). This example thus considers the counterfactual situation from the one presented, i.e., whether a plaintiff would have suffered the same harm if the defendant had acted lawfully.

There is no dispute that Plaintiffs suffered economic damages, but VanDyk contends "Plaintiff[s] fail to allege how any of VanDyk's actions or inactions caused [their] damage. There is a distinct lack of any connection between VanDyk and the reason(s) Plaintiff[s] invested in what was later discovered to be a Ponzi scheme." Opp'ns at 4. But Plaintiffs argue that "the failure of VanDyk to screen Ms. Cobb prior to her hire, [] to monitor her activities after her hire, and to take action after learning that she was carrying on a prohibited office-sharing arrangement with D.M. Financial . . . allowed Ms. Cobb to steal the money of the plaintiff(s)." Replies at 9. They contend that "[h]ad VanDyk not broken these laws, Ms. Cobb would not have been in a position to carry out her scheme because (1) VanDyk was required to report it to its regulatory agencies, and because (2) the California Department of Corporations and/or the Mortgage Review Board of HUD would have put her out of business before the financial depredations could for the most part

have been perpetrated." *Id.* at 10. The proposed amended complaints likewise contain allegations that VanDyk was required to comply with a multitude of laws, regulations, and other such rules that mandate its oversight of employees' activities, but VanDyk's alleged failure to do so allowed Cobb to continue her unlawful activities—and further that VanDyk encouraged, facilitated, and ratified these activities. In doing so, they contend that "but for" VanDyk's alleged failures to comply with applicable laws and regulations, Plaintiffs would not have been damaged. *See, e.g.*, Proposed Compl. ¶¶ 29-30, 34-42, 46-58, 142, 180, Thieme Action Dkt. No. 144-2; Proposed Compl. ¶¶ 29-30, 34-42, 46-58, 142, 180, Chenault Action Dkt. No. 114-2; Proposed Compl. ¶¶ 29-30, 34-42, 46-58, 142, 180, Haynes Action Dkt. No. 50-2. If proven, these facts would demonstrate that Plaintiffs incurred damages "as a result of" VanDyk's actions. Accordingly, the Court finds these allegations plausible at this point, and thus cannot find Plaintiffs' UCL claims are futile based on causation grounds.

Second, VanDyk notes that Plaintiffs cannot make any claims for damages under the UCL—only restitution—and argues that as "VanDyk never received any of the funds that Plaintiff[s] invested in the bridge loans—either directly from Plaintiff[s], DM Financial, or Diane Cobb—it cannot be responsible for restitution." Opp'ns at 5. The initial problem with this argument is that the remedies available for UCL violations include *both* restitution and injunctive relief. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003). Section 17203 of the UCL provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. . . . .

Cal. Bus. & Prof. Code § 17203. Plaintiffs assert that "the unlawful and unfair trade practices of VanDyk not only occurred in the past, but continue to this day as a matter of deliberate corporate policy[,]" and consequently seek injunctive relief "in the context of . . . a quality control plan . . . necessary to prevent future harm." Replies at 11. They elaborate that the Court could "fashion

12

[an] injunction or equitable orders—such as requiring VanDyk []—to prepare a corrective plan to ensure that it will properly vet its branch personnel before hire, supervise the branches reasonably thoroughly, ensure that a quality control plan is enacted by VanDyk and that it is vigorously enforced in the future, pay attention to Red Flag warnings, and the like[.]" *Id.* at 7. Thus regardless of whether restitution is available, Plaintiffs may be entitled to injunctive relief or other equitable remedies.

Furthermore, "[r]estitution under . . . section 17203 is confined to restoration of any interest in 'money or property, real or personal, which may have been *acquired* by means of such unfair competition.'" *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (quotations omitted; emphasis in original). The "which may have been acquired standard" is "substantially less stringent than a reliance or 'but for' causation test." *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 924 (2010). The UCL "requires only that the plaintiff must once have had an ownership interest in the money or property acquired by the defendant *through* unlawful means." *Shersher v. Superior Ct.*, 154 Cal. App. 4th 1491, 1500 (2007) (emphasis added). Thus, "it is not essential that money be paid directly to the recipient by the party seeking restitution." *Id.* (finding the "single sentence" in *Korea Supply*, 29 Cal. 4th at 1149, that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took *directly* from plaintiff[,]" (emphasis added) did not represent the California Supreme Court's ultimate holding or the UCL's requirements); *see also In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *32 (N.D. Cal. May 27, 2016) (finding restitution not barred by arguments that plaintiffs did not pay defendants directly and noting that "[a]lthough California Plaintiffs might not have paid Defendants directly, they nonetheless paid premiums which were then used to pay Defendants. Defendants' alleged failure to provide certain services led Plaintiffs, via the UCL, to seek 'the return of money or property [Defendants] acquired through its unfair practices.'" (quoting *Shersher*, 154 Cal. App. 4th at 1498)).

Plaintiffs' allegations about the restitution allegedly owed to them are somewhat unclear, but the Court cannot say at this point that any such allegations would necessarily be futile. Plaintiffs argue VanDyk "reaped monetary gain from the contacts, referrals, and loans completed

13

which Ms. Cobb brought to VanDyk [] through her use of the D.M. 'brand' during the years 2007-2012" (Mots. at 7), and "[t]he money invested or provided to Ms. Cobb, a VanDyk employee and agent, by plaintiff[s] for a mortgage product, including but not limited to bridge loans, . . . . were lost as a direct result of the violations of the UCL by VanDyk and by Ms.[]Cobb, its employee and ostensible agent" (Replies at 13). Although it is difficult to identify the exact allegations in Plaintiffs' proposed complaints that confirm the arguments made in their briefing, again, the Court cannot say such claims would necessarily be futile in light of the case law on restitution.

In sum, the Court is satisfied that Plaintiffs' proposed UCL allegations are not necessarily futile and given the lack of evidence of bad faith or prejudice to VanDyk—even in the face of Plaintiffs' delay—the Court will permit Plaintiffs leave to amend.

## CONCLUSION

In light of the foregoing analysis, the Court **GRANTS** Plaintiffs' Motions for Leave to Amend their Complaints as to their UCL claims. Plaintiffs shall file their amended complaints **by July 21, 2016**.

**IT IS FURTHER ORDERED** that a Case Management Conference will be held in the above-captioned matters before the Honorable Maria-Elena James **on August 4, 2016** at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. No later than seven calendar days before the Case Management Conference, the parties shall file a Joint Case Management Statement(s) containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/mejorders. No chambers copy is required.

**IT IS SO ORDERED.**

Dated: July 8, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge